UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LAURIE DUKE Jointly and as Natural Parents of Morgan Johnson, deceased, DALE JOHNSON Jointly and as Natural Parents of Morgan Johnson, deceased, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:20-cv-00125-JPH-DLP |
| DANFREIGHT SYSTEMS, INC., PIERRE ST. JEAN, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. CAMILLE WORTMAN**

Plaintiffs, Laurie Duke and Dale Johnson, brought this case after their son, Morgan Johnson, was involved in a fatal crash. Plaintiffs have disclosed Dr. Camille Wortman as an expert witness to testify at trial about their loss of Morgan's love and companionship. Defendants, the owner of the truck and driver of the truck, have filed a motion to exclude Dr. Wortman's testimony. Dkt. 56. For the reasons that follow, that motion is **GRANTED.** Dkt. [56].

**I.**
**Facts and Background**

Plaintiffs brought this case under Indiana's Child Wrongful Death Statute (CWDS), Ind. Code § 34-23-2-1, after Morgan was involved in a fatal crash with a truck that was owned by Danfreight Systems, Inc. and driven by Pierre St. Jean, dkt. 60 at 2. Liability is undisputed, dkt. 23 ¶¶ 7; 14, so the only issue for trial is damages.

1

Plaintiffs have retained Dr. Camille Wortman as an expert witness to testify about "the loss of love and companionship [Plaintiffs] suffered as a result of Morgan's death" and how that loss will continue to affect them in the future. Dkt. 56-1 at 1.  Dr. Wortman has a Ph.D. in psychology and is an Emeritus Professor of Psychology at Stony Brook University.  Dkt. 60 at 4.  Dr. Wortman's scholarly work and her opinions in this case focus on "the ramifications of the sudden, traumatic loss of a loved one . . . compared to deaths that occur under natural circumstances."  Dkt. 56-1 at 12.  Her work contrasts the psychological consequences of "sudden, traumatic deaths" to those of "normal, expected losses" and concludes that there are several major differences in the impact on surviving family members.  *Id.*  These consequences include intense feeling of "sadness, yearning or longing for the loved one" and symptoms of posttraumatic stress disorder.  *Id.*  While family members typically recover from normal, expected loss within a year or two, the effects of sudden, traumatic loss often continue for many years.  *Id.*

Dr. Wortman describes a study that she conducted in the mid-1980's designed to determine the "impact of the sudden, traumatic death of a spouse, child or sibling" which concluded that "traumatic death of one's child poses long-term difficulties."  *Id.* at 9-10.  The results of this study were published in the *Journal of Personality and Social Psychology.  Id.* at 10.  The findings of her study were later corroborated by several additional scientific studies "focused on how people cope with the sudden, traumatic death of a family member".  *Id.* at 12.

In her report in this case, Dr. Wortman "describes the impact of Morgan's death on [Plaintiffs'] physical and mental health and their ability to function in important life roles," dkt. 56-1 at 2, including the development of "many symptoms of PTSD," *id.* at 14.  To prepare this report, Dr. Wortman conducted in-depth interviews of Plaintiffs and interviewed five of Plaintiffs' closest friends and relatives to get a full picture of the relationship Plaintiffs had with their deceased son.  *Id.* at 7.  Dr. Wortman also administered a series of psychological tests/scales to Plaintiffs.  *Id.* at 8.  These tests are geared toward providing additional assessment of Plaintiffs' psychological symptoms and role functioning.  *Id.*  Dr. Wortman administered a total of at least six different tests, the methodology and findings of which are set forth in her report.  *Id.* at 8–9.

Based on these interviews and tests, Dr. Wortman's report extensively reviews Plaintiffs' history as individuals and as a couple, the history of their family, the relationship each Plaintiff had with their son, the relationship between Morgan and their surviving son—who is not a plaintiff—and a family health history.  *Id.* at 17–24.  She describes the initial impact on Plaintiffs of learning about Morgan's death.  *Id.* at 25.  She identifies several behavioral and somatic symptoms that Plaintiffs have manifested, such as disturbed sleep, changes in appetite, lack of motivation to exercise, increased fatigue, crying spells, and memory issues/poor concentration.  *Id.* at 27–28, 35–36.  She describes their emotional response to the loss, *id.* at 28–30, 36–37, as well as their issues with work, their social lives, and their reluctance to seek help to

cope with the loss, *id.* at 33–35, 40–41.  Dr. Wortman describes the long-term effects that the loss of Morgan has had and likely will continue to have on Plaintiffs.  *Id.* at 44.

Dr. Wortman's report explains that "[o]ne of the most important factors in arriving at a prognosis for [Plaintiffs] concerns the circumstances under which Morgan's death occurred.  His death was untimely and happened suddenly and without warning."  *Id.* at 43.  While she provides numerous examples of the damage to Plaintiffs caused by the loss of Morgan's love and companionship, Dr. Wortman's opinions are tied to the violent, sudden nature of Morgan's death.  *Id.* at 43–44 ("The fabric of their lives has been ripped apart by this crushing blow, particularly by the way it occurred.").

Defendants have filed a motion to exclude Dr. Wortman's expert testimony at trial.  Dkt. 56.

## II.
## Applicable Law

Federal Rule of Evidence 702 "confides to the district court a gatekeeping responsibility" to ensure that expert testimony is both relevant and reliable. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993)).  "In performing this role, the district court must engage in a three-step analysis, evaluating: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony."  *Id.* (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

For the first step, a witness must be qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016).  General qualifications are not enough; a foundation for answering specific questions is required.  *Hall*, 840 F.3d at 926. A witness qualified with respect to the specific question being asked may give opinion testimony if:

    a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b) The testimony is based on sufficient facts or data;

    c) The testimony is the product of reliable principles and methods; and

    d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Hall*, 840 F.3d at 926.

For the second step, the Court therefore must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid."  *Kirk*, 991 F.3d at 872 (quoting *Daubert*, 509 U.S. at 592–93).  Relevant factors may include "whether the expert's theory has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field."  *Id.*  "[T]his list is neither exhaustive nor mandatory." *Gopalratnam*, 877 F.3d at 780.  Instead, the test is "flexible" because "the gatekeeping inquiry must be tied to the facts of a particular case" and "the precise sort of testimony at issue."  *Id.*

If step two is satisfied, the Court must then assess whether "the expert testimony will assist the trier of fact." *Robinson v. Davol Inc.*, 913 F.3d 690, 695 (7th Cir. 2019).  For this step, the Court "evaluates whether the proposed scientific testimony fits the issue to which the expert is testifying." *Id.*

### III.
### Analysis

Defendants argue that Dr. Wortman's testimony is not relevant or helpful—and is therefore inadmissible—because it relates only to damages that are not recoverable under Indiana law.[1]  Dkt. 56 at 4–7.  In determining whether "the expert testimony will assist the trier of fact," the Court "evaluates whether the proposed scientific testimony fits the issue to which the expert is testifying." *Robinson*, 913 F.3d at 695.  Expert testimony is subject to Rule 403, and because expert testimony "can be both powerful and quite misleading," judges must "exercise[] more control over experts than over lay witnesses" in "weighing possible prejudice against probative force." *Daubert*, 509 U.S. at 595.

Here, the issue is "damages . . . for the loss of [Morgan's] love and companionship."  In determining the scope of damages that are available, the Court must apply Indiana substantive law by doing its "best to predict how the Indiana Supreme Court would decide" the issues.  *Webber v. Butner*, 923 F.3d 479, 482 (7th Cir. 2019).

---

[1] Defendants challenge the admissibility of Dr. Wortman's testimony on multiple grounds. Because the Court concludes that Dr. Wortman's testimony is not relevant, the Court addresses the issues of qualification and methodology only as necessary in evaluating relevance.

## A.     Damages available under Indiana's Child Wrongful Death Act

Defendants argue that Dr. Wortman's opinions are not relevant, and thus not helpful to the trier of fact, because they relate to damages that cannot be recovered under Indiana law.  Plaintiffs respond that Dr. Wortman's testimony is admissible because it relates to "emotional damages" that may be recovered.  The parties' arguments focus on what constitutes damages "for the loss of the child's love and companionship."  Ind. Code § 34-23-2-1(f).

Historically, "the pecuniary loss rule [was] the law in Indiana." *Miller v. Mayberry*, 506 N.E.2d 7, 8 (Ind. 1987).  Under that rule, a "parent could not recover for the loss of a child's love and affection." *Robinson v. Wroblewski*, 704 N.E.2d 467, 468 (Ind. 1998).  Instead, damages available to a parent for the loss of a minor "were limited to those losses on which a pecuniary value could be placed . . . determined from the assistance that the child would have provided through money, services or other material benefits." *Id.*

Indiana's Child Wrongful Death Act created a statutory exception to the "pecuniary loss rule."  Under that statute, the parent of a deceased child may recover, in addition to certain enumerated expenses and costs, damages "for the loss of the child's love and companionship."  Ind. Code § 34-23-2-1(f).  As a statutory exception to the "pecuniary loss rule," the Child Wrongful Death Act is strictly construed.  *See Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind. Ct. App. 1994), *aff'd and adopted* 678 N.E.2d 110 (Ind. 1997).  Consequently, a plaintiff's "emotional state is relevant only to the extent that it is relevant to his loss of love, companionship, and services. . . .

7

'[C]ompanionship' refers to 'a type of love, care and affection,' but does not refer to 'solatium, or recompense for grief or wounded feelings.'" *Randles v. Indiana Patient's Compensation Fund*, 860 N.E.2d 1212, 1231 n.8 (Ind. Ct. App. 2007).

In evaluating or measuring damages "for the loss of [a] child's love and companionship," Indiana courts focus on the nature and quality of the relationship that the parent shared with the child. For example, in *Hardiman v. Akins*, the Indiana Court of Appeals acknowledged the plaintiff's emotional suffering as a father but reversed his 10% settlement apportionment because of the "complete absence of a relationship" between him and his son. 738 N.E.2d 693, 696 (Ind. Ct. App. 2000) ("[T]his opinion is in no way intended to discount Father's grief."). In *Jones v. Jones*, the court took a similar relationship-based approach in affirming a 65%–35% apportionment of damages between a mother and father when the evidence showed that the mother had custody of the child and suffered a greater loss of companionship. 641 N.E.2d 98, 101 (Ind. Ct. App. 1994). But the evidence also showed that the father had a "strong relationship" with the child, so he was entitled to recover damages. *Id.*

Following this approach, Indiana courts have held that a parent's grief and suffering caused by the death of a child is not the same as loss of love and companionship, but a separate category of damages. *See Randles*, 860 N.E.2d at 1231 n.8. (quoting *Challenger Wrecker Mfg. Inc., v. Estate of Boundy*, 560 N.E.2d 94, 99 (Ind. Ct. App. 1990) ("To the extent that 'companionship' refers to solatium, or recompense for grief or wounded feelings, it is still an inappropriate measure of damages.")). As such, damages relating to grief are

8

outside the scope of the Child Wrongful Death Act.  Indiana's approach is consistent with other jurisdictions that treat grief and emotional distress as a different category of damages than loss of love and companionship.  *See Williams v. Monarch Transp., Inc.*, 238 Neb. 354, 360–61 (1991) (explaining that "in an action for wrongful death of a child, recoverable damages include parental loss of the child's society, comfort, and companionship" but not "mental suffering or anguish, bereavement, or solace");  *Carey v. Lovett*, 132 N.J. 44, 67–68 (1993) ("When parents sue for the wrongful death of a child, their damages may include . . . the pecuniary value of the child's companionship" but not "the parents' emotional distress.").

In sum, compensable loss of a child's love and companionship under Indiana's Child Wrongful Death Act is measured by the nature and quality of the relationship that the parent had with the child, rather than the emotional suffering that the parent experiences after the child's death.  *See Randles*, 860 N.E.2d at 1231 n.8;  *Hardiman*, 738 N.E.2d at 696;  *Jones*, 641 N.E.2d at 101.

Plaintiffs nevertheless argue that Indiana's Child Wrongful Death Statute (CWDS) permits the recovery of "emotional damages." Dkt. 60 at 2-3.  They cite no Indiana case, however, where a court has held that damages for either emotional harm or grief may be recovered under the CWDS.  Nor do they cite any Indiana case where a court has admitted expert opinions of parents' emotional pain and suffering caused by the nature and circumstances of a child's death in support of damages for loss of love and companionship.

Instead, Plaintiffs rely principally on *TRW Vehicle Safety Sys., Inc. v Moore*, 936 N.E.2d 201 (Ind. 2010). *See* dkt. 60 at 2, 18. But *TRW* involved Indiana's general Wrongful Death Act, which—unlike the CWDS—does not expressly provide for "love and companionship" damages. 936 N.E.2d at 222; Ind. Code § 34-23-1-1. Additionally, the issue in *TRW* was whether the underlying damage award was excessive in light of the evidence—not what form of emotional damages are recoverable in a wrongful death action. 936 N.E.2d at 219. The court found the award excessive because the jury used an incorrect measuring period to calculate the plaintiff-son's emotional damages, but the court did not comment on the substance of the evidence underlying the award. *Id.* at 219–24. *TRW* therefore has no bearing on the nature of damages for "loss of love and companionship" available under the CWDS.

### 1. Whether Dr. Wortman's opinions relate to damages that are recoverable under Indiana's Child Wrongful Death Act

Defendants argue that Dr. Wortman's testimony relates to solatium, grief, or wounded feelings—which are not compensable under Indiana law—rather than loss of love and companionship for which Plaintiffs may recover. Dkt. 56 at 4–5. More specifically, Defendants argue that Dr. Wortman's opinions measure Plaintiffs' grief as "magnified by the suddenness of [Morgan's] death." Dkt. 64 at 10 n.8. Plaintiffs respond that the loss of love and companionship includes emotional damages. Dkt. 60 at 3.

Dr. Wortman's report explains that Plaintiffs "are experiencing many symptoms of [Post-Traumatic Stress Disorder (PTSD)] in connection with their loss of Morgan's love and companionship," and that PTSD will continue to

affect various aspects of their lives in the future.  *Id.*  "Because exposure to traumatic events overwhelms an individual's ability to cope, it frequently results in the development of PTSD."  *Id.* at 14.  Further, the problems posed by PTSD "constitute a special burden for those who experience the sudden, traumatic loss of a loved one," but "are almost never encountered by people whose loved one dies from natural causes." *Id.*  Dr. Wortman's opinion that Plaintiffs are suffering from PTSD thus hinges on the suddenness and violence of Morgan's death.

Dr. Wortman's report cites the results of psychological tests that were administered to measure the emotional, mental, and psychological impact that Morgan's death has had on Plaintiffs.  Dkt. 56-1 at 8-9; 30-31; 38-39.  The results reveal that Plaintiffs were experiencing grief, depression, PTSD, diminished quality of life, despair, anger, and other symptoms.  Dkt. 56-1 at 30-32; 38-39.  Although Dr. Wortman states that these tests were given to help her "in assessing the loss of love and companionship sustained by [Plaintiffs] as a result of Morgan's death," dkt. 56-1 at 8, the report does not explain how the results of the tests specifically relate to loss of love and companionship under the CWDS.  And Dr. Wortman does not otherwise offer opinions tying these symptoms to loss of love and companionship as Indiana law defines it. Instead, her opinion is that Plaintiffs "have been irrevocably harmed by the traumatic death of their son." Dkt. 56-1 at 44.  She emphasizes that a substantial degree of Plaintiffs' suffering is due to the way the accident occurred.  *Id.*

11

Dr. Wortman's opinions are thus based on her evaluation of the impact that the manner and cause of Morgan's death had on Plaintiffs, rather than Indiana's more limited loss of love and companionship. *See Hardiman*, 738 N.E.2d at 695 (recognizing plaintiff-father's "horrible loss" but reversing his settlement award because he did not "suffer[] a compensable loss"). *Randles*, 860 N.E.2d at 1231 n.8; *cf. Challenger Wrecker Mfg. Inc., v. Estate of Boundy*, 560 N.E.2d 94, 99 (Ind. Ct. App. 1990) ("To the extent that 'companionship' refers to solatium, or recompense for grief or wounded feelings, it is still an inappropriate measure of damages.").

In other words, Dr. Wortman's research and methodological tools are focused on the "sudden, traumatic loss of a loved one" and she applied them to the nature of Morgan's death. Dr. Wortman summarizes this point at the beginning of her report: "[t]he conclusions drawn in this report are based on scientific evidence regarding the long-term impact of traumatic death." Dkt. 56-1 at 2. She goes on to explain: "It is well-established that the repercussions of losing a loved one, especially a child, depend on the circumstances under which the death occurred. I conclude my research review by identifying factors that characterize Morgan Johnson's death, and that are associated with a less favorable prognosis for his surviving parents." *Id.*; *see also id.* at 41 ("Both [Plaintiffs] have emphasized that the traumatic way that Morgan died has caused them intense psychological distress."). Indeed, Dr. Wortman contrasts Plaintiffs' current situation with other "normal, expected losses" they have experienced with family members "prior to Morgan's death,"

12

finding that "they are not experiencing any lingering, long-term consequences as a result of those losses." *Id.* at 12.

In sum, Dr. Wortman's research and scientific opinions focus on the psychological consequences to surviving family members of "sudden, traumatic deaths" compared to those of "normal, expected losses." Dr. Wortman's opinions regarding Plaintiffs' damages are likewise based on the sudden, unexpected, and violent nature of Morgan's death.

To the extent some of Dr. Wortman's opinions may not be based on the circumstances of Morgan's death, they are nonetheless based on her research which considers "the ramifications of the sudden, traumatic loss of a loved one" compared to "deaths that occur under natural circumstances." Dkt. 56-1 at 12. Consequently, her opinions do not fit the issue in this case—Plaintiffs' damages attributable to loss of their son's love and companionship—so her testimony would not assist the trier of fact. *Robinson*, 913 F.3d at 695.

And when Dr. Wortman's report expressly addresses loss of love and companionship, it's no longer attached to her research and methodological tools. For instance, after concluding that Plaintiffs "have suffered a catastrophic loss of love and companionship as a result of the death of their son," Dr. Wortman elaborates on that conclusion with generalized statements about Plaintiffs' relationship with Morgan that don't incorporate her research or any other specialized knowledge. *E.g.*, dkt. 56-1 at 42 ("Ever since Morgan was a baby, [Plaintiffs] showered him with an abundance of care and attention, resulting in an extremely close bond between Morgan and each of his

13

parents."); *id.* at 43 ("The loss of Morgan's love and companionship has had a devastating impact on each of his parents.  Virtually every aspect of their lives—including parenting, work, and social relationships—has been profoundly affected by Morgan's death.").  When Dr. Wortman returns to her methodological tools, the emphasis is always on the manner and circumstances of Morgan's death—factors that do not bear on Plaintiffs' loss of love and companionship. *Id.* ("One of the most important factors in arriving at a prognosis for Laurie and Dale concerns the circumstances under which Morgan's death occurred.").

It therefore would not be helpful for the jury to hear how Dr. Wortman applied her research in the field of "sudden, traumatic loss of a loved one" to an opinion about how Plaintiffs have been affected by the loss of their son's love and companionship. No matter how real and severe, grief and trauma resulting from the sudden, unexpected, and violent nature of Morgan's death—rather than loss of his love and companionship—are not within the scope of damages that are recoverable under Indiana law.

### B.   Whether Dr. Wortman's testimony is admissible under Rule 403

Defendants argue that Dr. Wortman's testimony is inadmissible for the separate reason that "the jury does not need an expert witness with a doctorate in psychology to understand the relationship that Plaintiffs had with their son." Dkt. 56 at 7.  According to Defendants, Dr. Wortman's testimony would not help the jury decide any fact in dispute because members of a jury have the innate ability to understand the loss of love and companionship of a family

14

member due to death.  Dkt. 56 at 7.  Further, Plaintiffs' loss of love and companionship is within the capacity of a juror to understand based on Plaintiffs' testimony.  Defendants cite cases from other circuits in which courts have excluded "expert testimony on these types of feelings" because the proposed testimony would not significantly assist the trier of fact.  *Id.* at 7, n.6.

Plaintiffs respond that "unless each member of the jury have suffered the *tragic and sudden loss* of a child," they cannot accurately measure Plaintiffs' "loss of love, companionship and emotional damages."  Dkt. 60 at 20 (emphasis added).  Moreover, without having had such personal experience, some jurors' reaction to Plaintiffs' testimony may be to "erroneously conclude that [Plaintiffs] are coping poorly and should be over the loss of Morgan's love and companionship by now."  Dkt. 60 at 21.  To counter this, Plaintiffs contend it's necessary for Dr. Wortman to testify that "the traumatic death of a child brings about enduring difficulties in the parents' lives causing depression, poorer well-being, marital conflict and health problems."  *Id.*

Plaintiffs' argument fails because it continues to rely on the idea that the nature and circumstances of the death is relevant to loss of love and companionship, a notion that the Court rejected based on its application of Indiana law.  Moreover, even if jurors could not understand the sudden, traumatic loss that Plaintiffs' experienced, it doesn't matter because—as explained above—that's not loss of love and companionship under Indiana law.  And here, the concept of loss of love and companionship of a loved one is within a juror's ability to understand.  *Cf. Holmes v. Krug*, 242 F. Supp. 3d

15

1177, 1181–1182 (8th Cir. 2017) (explaining that once a parent presents evidence of pecuniary losses such as filial care, attention, or protection, "jurors are presumed to be capable of converting the losses into monetary equivalents based on their own knowledge and experience"); *United States v. Brown*, 871 F.3d 532, 538–39 (7th Cir. 2017).

Moreover, Dr. Wortman's testimony has a substantial potential to be misleading. *Daubert*, 509 U.S. at 595. Specifically, her testimony could mislead jurors by making it more difficult for them to distinguish damages for the loss of Morgan's love and companionship, which are within the scope of Indiana law, from damages caused by the nature and circumstances of Morgan's death, which are not recoverable. Such confusion and the resulting risk of erroneous findings would upset the policy decisions that Indiana has set through statutes on the balance between damages that a parent may recover for the death of a child and damages that cannot be recovered. Any probative value of Dr. Wortman's testimony is substantially outweighed by the danger that it "may [induce] the jurors to defer to [her] conclusions rather than draw[] their own." *Brown*, 871 F.3d at 539. Her testimony therefore must be excluded under Rule 403.[2]

\*       \*       \*

The Court has no reason to doubt the incredibly grievous impact that Morgan's death has had and will continue to have on his parents. But Indiana

---

[2] Defendants also argue that Dr. Wortman's testimony is mostly hearsay and cumulative of what other witnesses will testify to. Because her testimony is not admissible under Rule 403, the Court does not reach this argument.

has chosen to limit the damages that a parent may recover for the wrongful death of a child.  Emotional suffering caused by the sudden, unexpected, and violent nature of a child's death is not included in the enumerated types of damages that Indiana allows parents to recover.  The Court is required to faithfully apply Indiana substantive law and doing so here requires exclusion of Dr. Wortman's opinions.  Expansion of Indiana law to include damages for the type of parental grief and suffering that is the subject of Dr. Wortman's report is for the consideration of the Indiana General Assembly, not the Court.  The Court's ruling does not mean that Plaintiffs cannot testify at trial about the many ways they have and will continue to be impacted by the loss of Morgan's love and companionship.

## IV.
## Conclusion

Defendants' motion to exclude the testimony of expert witness Dr. Camille Wortman is **GRANTED.**  Plaintiffs' motion to strike Defendants' notice of declaration, dkt. [67], and Defendants' motion for leave to file a supplemental declaration, dkt. [69], are both **DENIED as moot.**

**SO ORDERED.**

Date: 1/25/2022

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Edward A. DeVries
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP (Chicago)
edward.devries@wilsonelser.com

Dennis E. Harrold
STEPHENSON RIFE LLP (Shelbyville)
DennyHarrold@SRTrial.com

Michael S. Hult
KELLER & KELLER
mhult@2keller.com

Brady J. Rife
STEPHENSON RIFE LLP (Shelbyville)
bradyrife@srtrial.com

Sean Robert Roth
STEPHENSON RIFE LLP
seanroth@srtrial.com

M. Michael Stephenson
STEPHENSON RIFE LLP (Shelbyville)
mikestephenson@srtrial.com